NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| GECO CORP. d/b/a AMERICARE PHARMACY : : Plaintiff, : : v. : : H.D. SMITH WHOLESALE DRUG COMPANY, : : Defendant. : | **Hon. Dennis M. Cavanaugh** **OPINION** Civil Action No. 06-0685(DMC) |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion by Defendant H.D. Smith Wholesale Drug Company ("Defendant" or "H.D. Smith") to dismiss Plaintiff Americare Pharmacy's ("Plaintiff" or "Americare") Complaint pursuant to Fed. R. Civ. P. 12(b)(6). No oral argument was heard pursuant to Fed. R. Civ. P. 78. After carefully considering the submissions of the parties and for the following reasons, the Court finds that Defendant's motion to dismiss must be **granted**.

I.  **BACKGROUND**

On January 12, 2006, Plaintiff, a drug retailer, filed a complaint against Defendant H.D. Smith Wholesale Drug Company, alleging consumer fraud, actual fraud, equitable fraud, and breach of contract. Specifically, Plaintiff claims that the Lipitor it purchased from Defendant, which was the subject of a voluntary recall in May/June 2003, was counterfeit. Comp. ¶¶3, 38-39. Plaintiff further alleges that as a result of H.D. Smith's fraudulent conduct in connection with the sale of

Lipitor, Plaintiff was named as a defendant in a class action lawsuit, and resultingly suffered economic damages, including unreimbursed attorneys' fees, increased insurance premiums, and unspecified damage to its reputation. Comp. ¶41.

In its complaint, Plaintiff refers to a class action lawsuit brought in New Jersey Superior Court in 2003. The lawsuit was initiated by Marilyn Arons and other similarly situated persons against Americare, Rite Aid, H.D. Smith and Albers Medical Distributors, Inc. ("the Arons litigation.") The Arons plaintiffs claimed that they were sold non-authentic Lipitor by Americare and Rite Aid pharmacies, and that the defendants, including H.D. Smith, intentionally and knowingly made affirmative misrepresentations as to the authenticity of the Lipitor tablets they were selling. See Arons v. Rite Aid, et al., No. BER-L-4641-03, 2005 WL 975642 (Law Div. March 23, 2005).

The class alleged damages for breach of warranties and violations of the New Jersey Consumer Fraud Act. Id. Americare filed cross-claims for indemnification and contribution against its co-defendants. On March 23, 2005, following the completion of discovery, the Hon. Jonathan N. Harris, J.S.C., issued an Opinion in the class action suit in which he (1) denied the Arons plaintiffs' motion for class certification; (2) granted summary judgment dismissing the Arons plaintiffs' consumer fraud claims; and (3) concluded that summary judgment should likewise be entered on the breach of warranty claims if plaintiffs could not produce an expert opinion establishing that plaintiffs had, in fact, received counterfeit products. See id. at *10-12. As a result of that ruling, all the Arons plaintiffs' claims were dismissed with prejudice and defendants' cross-claims were dismissed without prejudice.

After the Arons litigation was concluded, the United States issued indictments against H.D. Smith, alleging that H.D. Smith was involved in a conspiracy to purchase and sell counterfeit drugs

in violation of federal law.  Comp. ¶10.  Plaintiff's complaint alleges that due to the Defendant's involvement in this conspiracy the Defendant knew that it was making false representations and assurances to Americare as to the authenticity of Lipitor.  Comp.  ¶36.

Defendant filed a motion to dismiss in the present action on March 14, 2006, pursuant to Fed. R. Civ. P. 12(b)(6), arguing that Plaintiff's claims are barred by New Jersey's entire controversy doctrine, collateral estoppel, and judicial estoppel.  Defendant also maintains that Plaintiff's fraud and consumer fraud claims fail to satisfy the particularity of pleading requirement of Rule 9(b).

## II.    STANDARD OF REVIEW FOR 12(B)(6) MOTION TO DISMISS

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), all allegations in the complaint must be taken as true and viewed in the light most favorable to the plaintiff.  See Warth v. Seldin, 422 U.S. 490, 501 (1975); Trump Hotels & Casino Resorts, Inc., v. Mirage Resorts Inc., 140 F.3d 478, 483 (3d Cir.1998).  If, after viewing the allegations in the complaint in the light most favorable to the plaintiff, it appears beyond doubt that no relief could be granted "under any set of facts which could prove consistent with the allegations," a court shall dismiss a complaint for failure to state a claim.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

### A.    Consideration Of Documents Attached To Defendant's Motion To Dismiss

Ordinarily, a 12(b)(6) motion must be decided only upon the allegations set forth in the complaint, without considering any outside documents or available facts.  If on a 12(b)(6) motion to dismiss, a party "presents matters outside the pleadings, the district court must convert the motion to dismiss into a motion for summary judgment, and give all parties a reasonable opportunity to present all material pertinent to such a motion under Rule 56."  In re Bayside Prison Litig., 190 F.

Supp. 2d 755, 760 (D.N.J. 2002). In deciding a 12(b)(6) motion to dismiss, the district court may only consider the complaint and limited categories of documents in order to "protect plaintiffs against, in effect, summary judgment by ambush." Id. (citing Bostic v. AT & T of the Virgin Islands, 166 F. Supp. 2d 350, 354-55 (D.V.I. 2001)). However, conversion to a motion for summary judgment is not required when a district court considers the following documents: (1) matters attached to the complaint; (2) matters incorporated into the pleadings by reference; (3) matters of public record; (4) matters integral to or upon which plaintiff's claim is based." In re Bayside, 190 F. Supp. 2d at 760 (internal citations omitted). The Third Circuit allows district courts to consider such documents because "neither party can claim prejudice or surprise by the court's reliance on the document." Id.

### B. "Authentic" Documents Attached By Defendants

In this case, Defendant attached eight exhibits, all of which pertain to or are pleadings from the Arons litigation. Defendant attached several documents that qualify as "authentic" documents. The Court may consider a "undisputedly authentic document upon which the complaint is based when the defendant attaches such a document to its motion to dismiss." Pension Benefit Guar. Corp. v. White Consol. Ind., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). Authentic documents have been characterized as documents to which "the public had unqualified access," including copies of pleadings and other materials filed in courts." Caldwell Trucking PRP Group v. Spaulding Composites Co., Inc., 890 F. Supp. 1247, 1252 (D.N.J. 1995). While Plaintiff's complaint does not specifically refer to any of the attached documents, the complaint nevertheless refers to the Arons litigation and claims damages based upon its involvement in that litigation. Comp. ¶¶3, 37, 41.

Thus, this Court may consider documents from the Arons litigation to the extent the complaint is based upon them.

Plaintiff argues that Defendant's right to dismissal pursuant to Rule 12(b)(6) is not evident on the face of the complaint because Defendant attached and relied upon documents from the Arons case. This argument is overbroad and unpersuasive because a district court is free to consider certain types of documents in deciding a 12(b)(6) motion to dismiss as discussed above. See Bayside, 190 F. Supp. 2d at 760. Plaintiff's argument that the Third Circuit's decision in Brody v. Hankin, 145 Fed. Appx. 768 (3d Cir. 2005) is dispositive is incorrect. ( Opp'n at 8). Brody merely reiterated the rule that a court may consider authentic documents in a 12(b)(6) motion to dismiss when the Plaintiff's claims are *based on* that document. 145 Fed. Appx. at 772 (citing Pension Benefit, 998 F.2d at 1196).

At a minimum, this Court can consider the Arons complaint in deciding the Rule 12(b)(6) motion because it is a public record upon which Plaintiff's complaint is based. Here, Plaintiff bases damages, in part, on the lawsuits filed against it. Comp. ¶3. The complaint in this case specifically mentions the Arons class action as a cause for Plaintiffs' economic losses. At least a portion of Americare's claimed damages are based on the Arons complaint because *but for* the filing of the complaint in the Arons litigation, Americare would not have been a defendant in the Arons class action and Plaintiff could not claim the damages listed in ¶41. Because Plaintiff's complaint is thus based on the Arons complaint, the court may consider it pursuant to the Third Circuit's decision in Pension Benefit as an authenticated document. 998 F.2d 1192.

In addition to the Arons complaint, the court can consider the trial court's March 23, 2005

5

written opinion in the Arons litigation because it is a public record, the contents of which are summarized in Plaintiff's complaint. Plaintiff's complaint summarizes the final result of the Arons litigation, thereby referencing the dismissal granted by Judge Harris. Comp. ¶40. This Court is entitled to consider documents and public records attached to Defendant's motion to dismiss where Plaintiff "excerpted, summarized, or alluded" to the documents in its complaint. Renz v. Schreiber, 832 F. Supp. 766, 771 (D.N.J. 1993). Because Plaintiff summarized Judge Harris' opinion in the complaint, this Court may consider this document without converting Defendant's motion to dismiss into a motion for summary judgment. As stated above, conversion to summary judgment is not necessary when the Court is considering documents that were referred to in the pleadings.

### III. ENTIRE CONTROVERSY DOCTRINE

Defendant seeks dismissal pursuant to Rule 12(b)(6), arguing that Plaintiff's claims are barred by the entire controversy doctrine. New Jersey's entire controversy doctrine is codified in New Jersey Rule of Civil Procedure 4:30A. This is substantive law, applicable in federal court. Paramount Aviation Corp. v. Agusta, 178 F.3d 132, 141 (3d Cir.), cert. denied, 528 U.S. 878 (1999) (citing Rycoline Prod., Inc. v. C & W Unlimited, 178 F.3d 883, 887 (3d Cir. 1997)).

#### A. Scope & Purposes of the Entire Controversy Doctrine

The entire controversy doctrine bars claims that should have been asserted in a prior action. Heir v. Delaware River Port Auth., 218 F. Supp. 2d 627, 636 (D.N.J. 2002); Hobart Bros. Co. v. Nat'l Union Fire Ins. Co., 354 N.J. Super. 229, 240 (App. Div.), certif. denied, 175 N.J. 170 (2002). This includes claims that were actually litigated as well as claims that could have been litigated in an earlier proceeding. Bernardsville Quarry v. Borough of Bernardsville, 929 F.2d 927, 930 (3d

Cir.), cert. denied, 502 U.S. 861 (1991). Additionally, the bar applies to all cross-claims and counterclaims that one party has against another party in the previous litigation. Fioriglio v. City of Atl. City, 963 F. Supp. 415, 420 (D.N.J. 1997). The purposes of the doctrine are threefold: "(1) complete and final disposition of cases through avoidance of piecemeal decisions; (2) fairness to parties to an action and to others with a material interest in it; and (3) efficiency and avoidance of waste and delay." Agusta, 178 F.3d at 137. The doctrine requires litigants to bring all related claims in a single action so that the judge in the original action can decide all claims fairly and conclusively. Brown v. Brown, 208 N.J. Super. 372, 379 (App. Div. 1986).

The central consideration in determining whether the entire controversy doctrine applies is whether the claims asserted in the present action arise from related facts or the same transaction or series of transactions that was the subject of the previous litigation. DiTrolio v. Antiles, 142 N.J. 253, 267-68 (1995); Maertin v. Armstrong World Ind., Inc., 241 F. Supp. 2d 434, 456 (D.N.J. 2002). "At a minimum, the entire controversy doctrine mandates joinder of those claims arising from 'the same overall transaction" involving the parties already named in the lawsuit." Dowdell v. Univ. of Med. and Dentistry of New Jersey, 94 F. Supp. 2d 527, 534 (D.N.J. 2000), (citing Crispin v. Volkswagenwerk, A.G., 96 N.J. 336, 343-44 (N.J. 1984)).

In this case, Plaintiff's claim arises from the same series of transactions as the claims at issue in the Arons litigation. Plaintiff claims injury based on the alleged sale of counterfeit Lipitor by Defendant. The plaintiffs in the Arons litigation also claimed that they were injured by the same transaction or series of transactions: the alleged sale of counterfeit Lipitor by Defendant and also by Plaintiff Americare Pharmacy, among others. If Plaintiff had properly brought its claims against

7

Defendant in the Arons litigation then judicial resources would not have been wasted and these claims could have been adjudicated more efficiently. To allow Plaintiffs to bring these claims in a separate action would thwart the underlying purposes of the entire controversy doctrine.

### 2. Limits on Application of Entire Controversy Doctrine

Consistently characterized as an equitable doctrine, the entire controversy doctrine will not bar claims where it would be inequitable to do so. The New Jersey Supreme Court has repeatedly emphasized that "judicial fairness" is the "polestar" for application of the doctrine. See K-Land Corp. No. 28 v. Landis Sewerage Auth., 173 N.J. 59, 74 (N.J. 2002); Gelber v. Zito P'ship, 147 N.J. 561, 565 (N.J. 1997); Codgell v. Hosp. Ctr. of Orange, 116 N.J. 7, 29 (N.J. 1989). To apply the entire controversy doctrine fairly, this Court must consider whether there was a fair and reasonable opportunity to litigate the claim. Hobart Bros. Co., 354 N.J. Super. at 241.

Furthermore, the entire controversy doctrine will not bar claims where to do so would frustrate the goal of judicial efficiency. Most recently in K-Land, the New Jersey Supreme Court held that the doctrine is not applicable to claims that are "unknown, unarisen, or unaccrued at the time of the original action." 173 N.J. at 70 (citing Pressler, Current N.J. Rules, comments 1 and 2 on R. 4:30A (2002)). The court explained that the doctrine will not be applied to encourage litigants to pursue unaccrued claims because to do so would transform the doctrine "from one designed to conserve judicial resources to a doctrine designed to encourage litigation." K-Land, 173 N.J. at 75.

First, Plaintiff argues that application of the entire controversy doctrine is inequitable because its claims against H.D. Smith brought in this action were unknown at the time of the Arons litigation. Specifically, Plaintiff contends that the United States did not file indictments against Defendant until

8

August of 2005. (Plaintiff's Brief at 14). This argument is unpersuasive because an indictment is only an accusation of wrongdoing. The indictments referred to in the complaint do not provide new information upon which Plaintiff can base its present claims. Furthermore, the allegations set forth in the indictment are based on events that occurred prior to the Arons litigation. Comp. ¶¶10-29. As stated in Plaintiff's complaint, the United States indictment alleges that during 2002 and 2003, prior to the Arons litigation was concluded, H.D. Smith "participated in a conspiracy to sell counterfeit, misbranded and illegally imported drugs." Comp. ¶10. These are facts that, through discovery, Plaintiff could have discovered. While these alleged facts may have been unknown to Plaintiff at the time of the Arons litigation, they were not unknowable. Plaintiff had two years during which it could engage in discovery and bring cross-claims against any or all co-defendants for fraud and breach of contract. Equity does not require that this Court make an exception to the entire controversy bar. These claims remained "unknown" during the Arons litigation through no fault but the Plaintiff's own. Additionally, there is no doubt that Plaintiff's claims were not unarisen or unaccrued because the alleged counterfeit sale or sales had already occurred at the time of the Arons litigation.

     Furthermore, Plaintiff was on notice of its potential cross-claims against H.D. Smith regarding its alleged distribution of counterfeit Lipitor. The Arons complaint stated that H.D. Smith had voluntarily recalled Lipitor due to a counterfeiting problem. (Arons Comp. ¶6). With the filing of the Arons complaint, Plaintiff was on notice of the fact that the Lipitor it purchased from H.D. Smith may have been counterfeit. Thus, Plaintiff had sufficient knowledge to bring cross-claims against H.D. Smith for fraud and breach of warranty. These claims should have been brought

because they arose from the same series of transactions giving rise to the Arons plaintiff's claims.

In the alternative, Plaintiff contends that even if the claims are barred by the entire controversy doctrine, Plaintiff reserved them in the previous action and thereby the entire controversy doctrine should not act as a bar in this litigation.  Plaintiff is right in its assertion that the entire controversy doctrine is not applicable if a court has directly reserved judgment of a claim against an existing party for a later action.  DiIorio v. Structural Stone & Brick, 368 N.J. Super. 134, 139 (App. Div. 2004).  Here, Plaintiff argues that Judge Harris' dismissal on the cross-claims without prejudice indicates that this was an "obvious" attempt by all co-defendants to indicate that all cross-claims were preserved.  This argument is not persuasive because the claims that Plaintiff is currently trying to assert are not the same ones that Plaintiff raised in Arons.  In Arons, Plaintiff raised claims for contribution and indemnification - it did not assert any claims based on fraud or breach of contract as Plaintiff does in this action.  Therefore any of Plaintiff's cross-claims that were dismissed without prejudice and impliedly reserved by Judge' Harris' decision were only claims for contribution and indemnification.

## IV.  CONCLUSION

For the reasons stated, it is the finding of this Court that Defendant's motion to dismiss is **granted**.  An appropriate Order accompanies this Opinion.

S/   Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Date:        November  17 , 2006
Original:    Clerk's Office
Cc:          All Counsel of Record
             The Honorable Mark Falk, U.S.M.J.
             File